**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

LALL RAMNAUTH,            :

                                  Civil Action No. 05-5504 (WJM)

          Petitioner,   :

             v.            :     **OPINION**

STATE OF NEW JERSEY,     :

          Respondent.   :

**APPEARANCES:**

Petitioner pro se          Counsel for Respondents
Lall Ramnauth             Nancy A. Hulett
Northern State Prison     Middlesex Co. Pros. Ofc.
168 Frontage Road        25 Kirkpatrick Street
P.O. Box 2300             3rd Floor
Newark, NJ 07114        New Brunswick, NJ 08901

**MARTINI**, District Judge

    Petitioner Lall Ramnauth, a prisoner currently confined at Northern State Prison in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondent is the State of New Jersey.

    For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> Defendant and his wife resided with his father-in-law and mother-in-law at their home in New Brunswick. On the evening of July 30, 2002, defendant, who appeared to be intoxicated, had an argument with both his mother-in-law and father-in-law.  His father-in-law told defendant to leave the house and not return until he was sober.

> The next day, the father-in-law went to work. Defendant was seen at about 8:00 a.m. in his father-in-law's workplace walking towards his father-in-law with a piece of wood in his hand, a stick measuring in width approximately one by four inches.  The two had a brief argument and then defendant was seen striking his father-in-law, who at that time was wearing a safety helmet.  The first strike came down on the helmet, but the next several strikes hit his arms and shoulders, causing skin abrasions.  No doubt defendant attempted to cause serious bodily injury.  Clearly, he used the stick as a weapon.  The father-in-law fell to the ground unconscious, but he revived before police officers arrived.

> After the attack, defendant began walking away, but he was detained by two employees.  The police officer tagged the piece of lumber, which at trial was properly identified, but erroneously referred to, as a two by four.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

(Opinion of Superior Court, Appellate Division, March 24, 2005, at 4-5.)

B.   Procedural History

Petitioner was convicted pursuant to a jury verdict in the Superior Court of New Jersey, Law Division, Middlesex County, of second-degree aggravated assault, N.J.S.A. 2C:12-1b(1), and third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4d.  On the aggravated assault conviction, Petitioner was sentenced to prison for a term of seven years with an eighty-five percent parole disqualifier pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2d, and to a concurrent term of four years on the weapon conviction.

On March 24, 2005, the Superior Court of New Jersey, Appellate Division, affirmed the conviction.  On May 25, 2005, the Supreme Court of New Jersey denied certification.  This Petition followed.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

4

where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

<u>Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

III.   <u>ANALYSIS</u>

A.   <u>Hearsay Testimony</u>

At trial, a police officer was permitted, over objection, to testify that she was told by an emergency medical technician that the victim had been unconscious.  Petitioner contends that the

introduction of this hearsay testimony deprived him of his Sixth

Amendment right to confront the witnesses against him.

The Appellate Division rejected this argument.

> At trial, a police officer testified that the
> victim was conscious when she arrived, but she had been
> told the victim previously lost consciousness.
> Obviously, this was a hearsay statement, however, over
> objection, the statement was allowed by the court.  The
> ruling by the court was not reversible error; whether
> or not the victim had lost consciousness did not have
> any bearing on the truth or falsity of the charge of
> aggravated assault.  Moreover, the victim himself
> testified that he had lost consciousness.

(Opinion of Superior Court, Appellate Division, at 5.)

The Sixth Amendment's Confrontation Clause provides that,

"In all criminal prosecutions, the accused shall enjoy the right

... to be confronted with the witnesses against him."  Recently,

the Supreme Court has traced the historical roots of the

Confrontation Clause and has distinguished the application of the

Confrontation Clause to different types of hearsay evidence.  <u>See</u>

<u>generally</u> <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

> Where nontestimonial hearsay is at issue, it is
> wholly consistent with the Framers' design to afford
> the States flexibility in their development of hearsay
> law -- as does [<u>Ohio v. ]Roberts</u>, [448 U.S. 56, 66
> (1980),] and as would an approach that exempted such
> statements from Confrontation Clause scrutiny
> altogether.  Where testimonial evidence is at issue,
> however, the Sixth Amendment demands what the common
> law required:  unavailability and a prior opportunity
> for cross-examination.  We leave for another day any
> effort to spell out a comprehensive definition of
> "testimonial."  Whatever else the term covers, it
> applies at a minimum to prior testimony at a
> preliminary hearing, before a grand jury, or at a
> former trial; and to police interrogations.  These are

7

the modern practices with closest kinship to the abuses
at which the Confrontation Clause was directed.

Crawford, 541 U.S. at 68 (footnote omitted).[2]  See also Davis v.
Washington, 126 S.Ct. 2266 (2006) (statements taken by police in
the course of an interrogation are "nontestimonial," and are not
subject to the Confrontation Clause, when they are made under
circumstances objectively indicating that the primary purpose of
the interrogation is to enable police assistance to meet an
ongoing emergency; statements taken by police in the course of
interrogation are "testimonial," and subject to the Confrontation
Clause, when the circumstances objectively indicate that there is
no ongoing emergency and that the primary purpose of the
interrogation is to establish or prove past events potentially
relevant to later criminal prosecution).  The Confrontation
Clause "does not bar the use of testimonial statements for
purposes other than establishing the truth of the matter
asserted."  Crawford, 541 U.S. at 59 n.9 (citing Tennessee v.
Street, 471 U.S. 409 (1985)).

---

[2] In Ohio v. Roberts, 448 U.S. 56, 66 (1980), the Supreme
Court held that the Confrontation Clause does not preclude the
admission of an unavailable witness's hearsay statement if it
bears "adequate indicia of reliability."  Under Roberts, a
hearsay statement contains such "adequate indicia of reliability"
if it falls within a "firmly rooted hearsay exception" or if it
bears "particularized guarantees of trustworthiness."  448 U.S.
at 66.

The Court of Appeals for the Third Circuit has not addressed the issue whether Crawford applies retroactively.  Most Circuit Courts, however, have held that it does not, on the rationale that newly promulgated rules of criminal procedure generally do not apply retroactively to cases on collateral review.  See generally Espy v. Massac, 443 F.3d 1362 (11th Cir. 2006) (Crawford rule does not apply retroactively); Dorchy v. Jones, 398 F.3d 783, 788 (6th Cir. 2005) (same); Murillo v. Frank, 402 F.3d 786, 790 (7th Cir. 2005) (same); Mungo v. Duncan, 393 F.3d 327, 336 (2d Cir. 2004) (same), cert. denied, 544 U.S. 1002 (2005); Brown v. Uphoff, 381 F.3d 1219, 1227 (10th Cir. 2004) (same), cert. denied, 543 U.S. 1079 (2005).  Contra Bockting v. Bayer, 399 F.3d 1010, as amended, 408 F.3d 1127 (9th Cir. 2005), cert. granted, 126 S.Ct. 2107 (2006).

In any event, Confrontation Clause errors are subject to harmless error analysis.  See U.S. v. Reynolds, 171 Fed.Appx. 961, 966, 2006 WL 760291, *4 (3d Cir. 2006) (citing Delaware v. VanArsdall, 475 U.S. 673, 684); United States v. Al-Sadawi, 432 F.3d 419, 426 (2d Cir. 2005)).  See also U.S. v. Arriola-Perez, 137 Fed.Appx. 119, 133, 2005 WL 1463502, *11 (10th Cir. 2005), cert. denied, 126 S.Ct. 1024 (2006).

Prior to the Crawford opinion, the Court of Appeals for the Third Circuit had held that, under certain circumstances, police officers may reveal information received out-of-court for the

9

limited purpose of establishing background or context for the officers' actions.  See United States v. Sallins, 993 F.2d 344 (3d Cir. 1993).  At the same time, the Court noted the potential for abuse.

> "In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct.  His testimony that he acted 'upon information received,' or words to that effect, should be sufficient.  However, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted.  The need for the evidence is slight, the likelihood of misuse great."

Sallins, 993 F.2d at 346 (quoting 2 McCormick on Evidence § 249, at 104 (4th ed. 1992)).  See also United States v. Lopez, 340 F.3d 169 (3d Cir. 2003) (again recommending the use of "general terms" to provide background for police activities); United States v. Price, 2006 WL 1795108 (3d Cir. June 30, 2006) ("Police officers are permitted under Sallins to explain the background context for their arrival at a scene.  When the explanation cannot be effected without relating some contents of the information received, Sallins does not prohibit admission of such details.").

Here, as found by the Appellate Division, the police officer's testimony that the victim had lost consciousness at some point was merely cumulative to the testimony of the victim,

himself, and was harmless.  The Appellate Division's decision is neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner is not entitled to relief on this claim.

B.   Sufficiency of the Evidence

Petitioner contends that there was insufficient evidence to sustain his conviction for possession of a weapon, and that the State failed to prove every element of the offense of possession of a weapon for an unlawful purpose, because (1) the indictment charged him with possession of a "2 x 4" piece of wood and the piece of wood introduced at trial was a "1 x 4" piece of wood, and (2) there was no evidence that the piece of wood introduced at trial was the piece of wood that Petitioner used.

The Appellate Division rejected Petitioner's claim.

> From the trial testimony, it is clear that defendant had the piece of lumber in his hand and intended to use it as a weapon, as he actually did moments later.  The State proved the elements for conviction of possession of a weapon, which the jury found, were satisfied beyond a reasonable doubt.  State v. Villar, 150 N.J. 503, 510 (1997) (stating the four elements necessary to support a conviction under N.J.S.A. 2C:39-4d).

(Opinion of Appellate Division, at 5-6.)

"Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." Dunn v. United States, 442 U.S. 100, 106 (1979) (citations omitted).  See also Jackson v. Virginia, 443

U.S. 307, 314 (1979) ("a conviction upon a charge not made ... constitutes a denial of due process").

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

Berger v. United States, 295 U.S. 78, 82 (1935).

Where a defendant is convicted of a crime, but the charging instrument never charged the defendant with an essential element of that crime, a constructive amendment of the indictment has occurred and reversal is warranted.  Stirone v. United States, 361 U.S. 212, 218 (1960).  "A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment."  Dunn, 442 U.S. at 105 (citing Berger, 295 U.S. 78).

> Unlike a constructive amendment, a variance can result in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense.  To demonstrate prejudice from a variance, a defendant 'must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right.'  'A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense.'

12

<u>U.S. v. Daraio</u>, 445 F.3d 253, 262 (3d Cir. 2006) (citations omitted).  <u>See also</u> <u>Coffield v. Carroll</u>, 2004 WL 2851801 (D. Del. 2004) (variance in name of victim is not fatal); <u>Muhammad v. Rafferty</u>, 1987 WL 5219 (D.N.J. 1987) (same).

Here, the offense charged was possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d.  That section provides that "Any person who has in his possession any weapon, except a firearm, with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the third degree." "'Weapon' means anything readily capable of lethal use or of inflicting serious bodily injury."  N.J.S.A. 2C:39-1r.

> In order to sustain a conviction under N.J.S.A. 2C:39-4d, the State must prove four facts beyond a reasonable doubt: (a) the item possessed was a weapon within the meaning of N.J.S.A. 2C:39-1r; (2) the defendant possessed the weapon with knowledge or awareness of control over the weapon; (3) the defendant's purpose or conscious objectiv e was to use the weapon against the person or property of another; and (4) the defendant intended to use the weapon in a manner proscribed by law.

<u>State v. Villar</u>, 150 N.J. 503, 510 (1997) (citation omitted).

Here, the difference between the words of the indictment and the proof at trial did not modify an essential element of the offense; instead, there was a mere variance of proof.  The indictment adequately put Petitioner on notice that he could be convicted at trial based upon the "1 x 4" piece of wood collected at the scene and produced to defense counsel prior to trial

13

rather than the "2 x 4" piece of wood described in the indictment.

A claim that the jury's verdict was against the weight of the evidence also raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

The Appellate Division's finding that the evidence was sufficient to find that the "1 x 4" piece of wood constituted a weapon within the meaning of the New Jersey statutes is neither contrary to nor an unreasonable application of controlling federal law.  Petitioner is not entitled to relief on this claim.

14

C.   <u>Prosecutorial Misconduct</u>[3]

   1.   <u>Withholding exculpatory evidence from grand jury</u>

   Petitioner contends that the prosecutor withheld certain evidence from the grand jury, including, <u>inter alia</u>, evidence that the piece of wood alleged to have been the weapon was a "1 x 4" piece of wood rather than a "2 x 4" piece of wood, that the piece of wood recovered was only "possibly" the weapon used, and medical evidence about the extent of the victim's injuries, including whether he had told medical personnel that he had lost consciousness.  The Appellate Division rejected this claim without discussion.

   The Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the states.  <u>Alexander v. Louisiana</u>, 405 U.S. 625, 633 (1972).  Thus, any claim of defect in a state grand jury proceeding is a claim of a state-law error that does not raise federal constitutional concerns unless it rises to the level of a due process deprivation.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  <u>Cf.</u> <u>U.S. v. Console</u>, 13 F.3d 641, 671-72 (3d Cir. 1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial

_____

   [3] Respondent contends that these claims are not exhausted, because Petitioner did not frame the claim in federal constitutional grounds before the state courts.  Because the claims are meritless, this Court may deny them without requiring exhaustion.  <u>See</u> 28 U.S.C. § 2254(b)(2).

misconduct before the indicting grand jury) (citing <u>Vasquez v.</u>
<u>Hillery</u>, 474 U.S. 254 (1986)).  Where any error in a state grand
jury proceeding is rendered harmless by a subsequent petit jury
verdict, there is no due process deprivation.  <u>See</u>, <u>e.g.</u>, <u>Lopez</u>
<u>v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989); <u>United States v.</u>
<u>Mechanik</u>, 475 U.S. 66, 72-73 (1986) (involving a violation of
Fed.R.Crim.P. 6(d)).

Here, the petit jury found Petitioner guilty of the crimes
charged beyond a reasonable doubt, rendering harmless any error
in the state grand jury proceedings.  Petitioner is not entitled
to relief on this claim.

2.   <u>Inflammatory Language</u>

Petitioner contends that he was deprived of due process by
various acts of prosecutorial misconduct, including the failure
to amend the indictment to reflect that the piece of wood
allegedly used as a weapon was a "1 x 4" piece of wood rather
than a "2 x 4" piece of wood, improper questioning about a prior
arson by Petitioner that the Court had ruled could be admitted
only for a limited purpose and should be referred to as an
"incident" rather than an "offense," and the use of inflammatory
language in the closing argument, in which the prosecutor
referred to the game "Clue," which involves a murder, and
referred to Petitioner stalking the victim.  The Appellate
Division rejected this claim without discussion.

16

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he

17

relevant question is whether the prosecutor's comments 'so
infected the trial with unfairness as to make the resulting
conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477
U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S.
637 (1974)).  In evaluating the likely effect of improper
comments, a court may consider whether the improper comments were
invited by or responsive to prior comments by opposing counsel.
<u>Darden</u>, 477 U.S. at 181-82.  Thus, "Supreme Court precedent
counsels that the reviewing court must examine the prosecutor's
offensive actions in context and in light of the entire trial,
assessing the severity of the conduct, the effect of the curative
instructions, and the quantum of evidence against the defendant."
<u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

    Here, the prosecutor's passing references to a prior arson
"offense," rather than "incident," by Petitioner and highlighting
the dangerousness of Petitioner's conduct in connection with the
charged crimes was not so inflammatory as to deprive Petitioner
of a fair trial.  Indeed, the jury acquitted Petitioner of the
charge of terroristic threats with respect to which the
prosecutor made reference to the prior arson offense.  The
reference to the weapon as one that could "possibly kill" was not
inappropriate in connection with a charge of aggravated assault,
serious bodily injury, which requires proof of injury that could

cause a substantial risk of death.  Petitioner is not entitled to relief on this claim.

D.   <u>Jury Instructions</u>

At trial, the court instructed the jury on the charged offense of aggravated assault, serious bodily injury.  (Tr. of Aug. 6, 2003, at 114-21.)  The court later instructed the jury on the lesser included offenses of aggravated assault, significant bodily injury, and simple assault.  (Tr. of Aug. 6, 2003, at 132-35, 136-37.)  When the jury returned its guilty verdict on aggravated assault, serious bodily injury, defense counsel asked for a clarification whether the jury had found serious or significant bodily injury.  The court responded that the jury had found Petitioner guilty of the offense charged, aggravated assault, serious bodily injury, so the jury did not address the lesser included offenses.  (Tr. of Aug. 7, 2003, at 15.)  The jury was then polled and all twelve deliberating jurors stated that they agreed with the verdict as rendered by the foreperson. (Tr. of Aug. 7, 2003, at 15-16.)

Petitioner contends that he was denied a fair trial by faulty jury instructions regarding the lesser included offenses and because the jury verdict does not indicate the form of assault of which the jury found Petitioner guilty.  The Appellate Division denied this claim without discussion.

19

Respondent contends that Petitioner failed to exhaust this claim in state court, because he did not frame the issue in federal constitutional terms.  However, the case of <u>State v. Vick</u>, 117 N.J. 288 (1989), on which Petitioner relied in both state court and here, is a case decided under the Fourteenth Amendment to the U.S. Constitution.  Accordingly, it appears that Petitioner has exhausted this claim.  To the extent the claim is unexhausted, this Court will exercise its discretion to deny the claim without requiring exhaustion.  <u>See</u> 28 U.S.C. § 2254(b)(2).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

<u>Estelle v. McGuire</u>, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of

20

proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997). See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis. Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge. If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." <u>Cool v. United States</u>, 409 U.S. 100, 104 (1972). "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." <u>Victor v. Nebraska</u>, 511 U.S. 1, 22 (1994); <u>see also</u> <u>Cage v. Louisiana</u>, 498 U.S. 39, 41 (1990). As the Supreme Court explained in <u>Victor</u>,

> so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a
> reasonable doubt, the Constitution does not require
> that any particular form of words be used in advising
> the jury of the government's burden of proof. Rather,
> taken as a whole, the instructions [must] correctly
> conve[y] the concept of reasonable doubt to the jury.

<u>Victor</u>, 511 U.S. at 6 (citations and internal quotation marks omitted).

"[A] misdescription of the burden of proof ... vitiates <u>all</u> the jury's findings. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 281 (1993) (emphasis in original). Such an error is considered structural and thus is not subject to harmless error review. <u>See id.</u> at 280-82. <u>But see</u> <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

22

Here, when instructing the jury as to lesser-included
offenses, the court specifically told the jury that they were
"not to render a verdict on these offenses or answer the
questions on the verdict sheet unless [the jury found] that the
State has failed to meet its burden with regard to the original
offenses in the indictment." (Tr. of Aug. 6, 2003, at 131.)  The
court then proceeded to instruct as to the lesser included
offenses of aggravated assault, significant bodily injury, and
simple assault. (Tr. of Aug. 6, 2003, at 132-35, 136-37.)  The
trial judge also reviewed with the jury the verdict sheet, and
reminded the jury that they should proceed to the lesser included
offenses of aggravated assault, significant bodily injury, and
simple assault, only if they found the defendant not guilty of
the charged offense of aggravated assault, serious bodily injury.
(Tr. of Aug. 6, 2003, at 140.)

Petitioner has failed to identify any error in the
instructions, themselves, and this Court can discern none.  With
respect to the verdict, the jury found Petitioner guilty of the
charged offense, so did not address the lesser included offenses.
(Brief of Defendant - Appellant, Appellate Division, Ex. DA3,
Verdict Sheet.) There is no ambiguity as to the jury verdict.
Petitioner has failed to establish any right to relief on this
claim.

E.   <u>Trial Court's Response to Jury Question</u>

During deliberations, the jury sent a question to the judge. "Do we need to believe the prosecutor needs to prove the weapon is, in fact, a two-by-four piece of wood?" (Tr. of Aug. 6, 2003, at 148.)  In response, the trial judge advised the jury as follows:

> Ladies and gentlemen, I have discussed the question with both counsel.  And basically what I have come up with is the fact that we -- I have given you the charge with regard to what it is you are to consider with regard to this particular count.
>
> The charge that I gave you, possession of a weapon with a purpose to use it unlawfully against the person or property of another indicates that the elements that the prosecutor must prove are as follows.  That there was a weapon; that the defendant possessed the weapon; that the defendant possessed the weapon with the purpose to use it against the person or property of another; and that the defendant's purpose was to use the weapon unlawfully.
>
> Those are the elements that the prosecutor must prove.  I don't think I need to say anything more than that.  Follow the charge as I gave it to you, the law as it presently exists.

(Tr. of Aug. 7, 2003, at 10-11.)

Petitioner contends that the trial court should have answered the jury question with a simple "yes."  The Appellate Division denied this claim without discussion.

When the jury requests clarification of the charge, the trial judge must clear away the confusion "with concrete accuracy." <u>Bollenbach v. U.S.</u>, 326 U.S. 607, 612-13 (1946).  <u>See also</u> <u>Grecco v. O'Lone</u>, 661 F. Supp. 408, 413 (D.N.J. 1987)(citing

United States v. McCall, 592 F.2d 1066, 1068 (9th Cir. 1979)).
"The ultimate question is 'whether the charge taken as a whole
was such as to confuse or leave an erroneous impression in the
minds of the jurors.'"   McCall, 592 F.2d at 1069.   Thus, where an
original instruction generally addresses a jury's question and is
a correct statement of the law, it is not necessarily reversible
error to re-read the original charge.   Id. at 1068-69.

Here, the trial court reiterated its original instructions
on the elements required to establish possession of a weapon for
an illegal purpose.   That instruction correctly stated the law,
answered the jury's question, and, as previously addressed, any
variance in proof regarding the size of the piece of wood used as
a weapon is not fatal to the conviction.   Accordingly,
Petitioner's position that the trial court should have answered
the question, "yes," is simply incorrect.   Petitioner is not
entitled to relief on this claim.

F.   Sentencing

Petitioner challenges his sentencing on two grounds.   He
argues that the sentence violates Blakely v. Washington, 542 U.S.
296 (2004), because the trial court made a finding, that
Petitioner had beat his wife, in connection with the imposition
of sentence.   In addition, he argues that the trial court
impermissibly sentenced him pursuant to the No Early Release Act,
N.J.S.A. 2C:43-7.2.   The Appellate Division rejected both claims.

1.   <u>The Blakely Claim</u>

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471, 490 (2000),
pursuant to the Sixth Amendment right to trial by jury, the
Supreme Court held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt."   In <u>Blakely v.
Washington</u>, 542 U.S. 296 (2004), the Supreme Court overturned a
sentence imposed under Washington state's sentencing system,
explaining that "the relevant statutory maximum is not the
maximum sentence a judge may impose after finding additional
facts, but the maximum he may impose without any additional
findings."   542 U.S. at 302 (internal quotations omitted).   Most
recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the
Supreme Court applied the rule of <u>Apprendi</u> to the United States
Sentencing Guidelines, finding the Guidelines unconstitutional,
and rendering them merely advisory, rather than mandatory.

Under New Jersey's Code of Criminal Justice, as in effect at
the time of Petitioner's sentencing, a defendant cannot be
sentenced to a period of imprisonment greater than the
presumptive term for the crime he committed, unless the judge
finds one or more statutory aggravating factors.   <u>See</u> N.J.S.A.
2C:44-1(f)(1).   A crime of the second degree, as was Petitioner's
aggravated assault conviction, is punishable by a term of

26

imprisonment of between five and ten years, with a presumptive
term of seven years.  N.J.S.A. 2C:43-6(a)(2); N.J.S.A. 2C:44-
1(f)(1)(c).

In <u>State v. Natale</u>, 184 N.J. 458 (N.J. 2005), the Supreme
Court of New Jersey evaluated the constitutionality of the New
Jersey sentencing scheme in light of the <u>Apprendi</u> line of cases.

> Our Code provisions make clear that, before any
> judicial factfinding, the maximum sentence that can be
> imposed based on a jury verdict or guilty plea is the
> presumptive term.  Accordingly, the "statutory maximum"
> for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive
> sentence.

<u>Natale</u>, 184 N.J. at 484.  Because the Code's system allows for
sentencing beyond the statutory maximum presumptive term, the
Supreme Court of New Jersey found the system unconstitutional and
determined that the appropriate remedy would be to follow the
lead of <u>Booker</u> and abolish the presumptive terms.  "Without
presumptive terms, the 'statutory maximum' authorized by the jury
verdict or the facts admitted by a defendant at his guilty plea
is the top of the sentencing range for the crime charged, <u>e.g.</u>,
ten years for a second-degree offense."  <u>Natale</u>, 184 N.J. at 487
(citation omitted).

The Court of Appeals for the Third Circuit generally has
held that the rules announced in the <u>Apprendi</u> line of cases are
not applicable retroactively to cases on collateral review.  <u>See
generally</u> <u>In re Olopade</u>, 403 F.3d 159 (3d Cir. 2005) (finding
that the decision of the supreme Court in <u>Booker</u> does not apply

27

retroactively to cases on collateral review); <u>United States v.</u>
<u>Swinton</u>, 333 F.3d 481 (3d Cir.), <u>cert. denied</u>, 540 U.S. 977
(2003) (holding that <u>Apprendi</u> does not apply retroactively to
cases on collateral review); <u>In re Turner</u>, 267 F.3d 225 (3d Cir.
2001) (holding that <u>Apprendi</u> does not apply retroactively to
cases on collateral review).  <u>See also</u> <u>United States v. Price</u>,
400 F.3d 844, 849 (10th Cir.), <u>cert. denied</u>, 126 S.Ct. 731 (2005)
(<u>Blakely</u> does not apply retroactively to cases on collateral
review).  Similarly, the Supreme Court of New Jersey has held
that the rule it announced in <u>Natale</u> is applicable retroactively
only to cases in the direct appeal pipeline as of the date of
that decision.  <u>Natale</u>, 184 N.J. at 494.

     In any event, it does not appear that the trial court
violated the rule of <u>Apprendi/Blakely</u>.  This is not a situation
in which a sentence was imposed, on the basis of judicial fact-
finding, in excess of the statutory maximum for <u>Apprendi</u> and
<u>Blakely</u> purposes.  Petitioner received the presumptive seven-year
sentence permitted without additional fact-finding.  There has
been no violation of Petitioner's Sixth Amendment right to trial
by jury.  Petitioner is not entitled to relief on this claim.

     2.   <u>The NERA Claim</u>

     Petitioner contends that the trial court improperly imposed
a sentence under the New Jersey No Early Release Act.  N.J.S.A.
2C:43-7.2.  The Appellate Division rejected this claim.

28

>      Finally, defendant's sentence, which included a no
> early release provision, N.J.S.A. 2C:43-7.2c, complied
> with the law and was not illegal.  NERA was amended
> effected June 29, 2001, which was prior to the date of
> the offense here and includes the offense of aggravated
> assault, N.J.S.A. 2C:12-1b(1) as being subject to the
> no early release provision of the statute.

(Opinion of Superior Court, Appellate Division, at 6.)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O'Lone, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Here, Petitioner claims solely an error of state law, which is not amenable to correction in a federal habeas corpus proceeding.  See 28 U.S.C. § 2254(a).  Moreover, to the extent this Court has jurisdiction to entertain this issue, it is clear that the sentence imposed comported with state law.  See N.J.S.A. 2C:43-7.2(d)(4).  Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

V.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


s/William J. Martini

_____
William J. Martini
United States District Judge

Dated: 12/27/06

30